**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DANIEL L. MEIER,

      Plaintiff,

v.                                                                                          Case No. 07-CV-11410

ROBERT L. GREEN,

      Defendant.
                                                    /

**OPINION AND ORDER AWARDING ATTORNEYS'
FEES AND COSTS TO DEFENDANT**

**I. BACKGROUND**

On June 28, 2007, this court entered an order granting Defendant Robert Green's motion to dismiss after finding that Plaintiff Daniel Meier's claims were barred by the *Rooker-Feldman*[1] and *res judicata* doctrines, and Plaintiff's Title VII claim was barred because there is no individual liability under Title VII and Plaintiff did not file an Equal Employment Opportunity Commission ("EEOC") charge. (6/28/07 Order.) On September 6, 2007, the court granted Defendant's motion for sanctions, finding that:

> Plaintiff was either aware or should have been aware that his claims were untenable. All three claims raised by Plaintiff in his current complaint are clearly defective. With respect to his claim of IIED, Plaintiff already made this claim against Defendant in his second suit and such claim was dismissed on the grounds of *res judicata* and collateral estoppel. Regarding Plaintiff's Title VII claim, it is barred because there is no individual liability under Title VII and because Plaintiff never filed the

---

[1]The *Rooker-Feldman* doctrine originated in two Supreme Court cases, *Rooker-Fidelity Trust Co.,* 263 U.S. 413 (1923), and *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). The doctrine holds that lower federal courts do not have jurisdiction to review challenges to state court decisions, because such reviews may only be had in the Supreme Court pursuant to 28 U.S.C. § 1257.

> required EEOC charge. Further, *res judicata* also bars the claim because it could have been brought in Plaintiff's prior actions. With respect to Plaintiff's Fourteenth Amendment due process claim, Defendant Green is not a state actor, the claim is barred by the *Rooker-Feldman* doctrine as Plaintiff is essentially arguing that the state court proceedings were constitutionally infirm, and the claim is also likewise barred by *res judicata*. The multiple opinions disposing of Plaintiff's claims for the very reasons outlined above put, or should have put Plaintiff on notice that his claims are untenable. . . . The court finds that Plaintiff's persistent attempts to relitigate matters previously decided by this and other courts and to bring claims that are unsupported by the law warrants an imposition of sanctions. Specifically, the court shall require Plaintiff to pay Defendant's actual costs and attorneys' fees incurred in this case.

(9/06/07 Order at 5-6.) The order instructed Defendant that if the parties could not file a stipulation regarding Defendant's attorneys' fees and costs incurred in defending against Plaintiff's fourth lawsuit, Defendant was to submit an affidavit and detailed supporting documentation evidencing such reasonable attorneys' fees and costs. (*Id.* at 7.) Accordingly, on September 11, 2007, Defendant submitted an affidavit and supporting documentation seeking $18,242.38 in attorneys' fees and costs, comprised of 76.8 hours of attorney time at $205.00 per hour, 2.2 hours of attorney time at $315.00 per hour, thirteen hours of paralegal time at $100.00 per hour and $505.38 in costs. (*See generally* Def.'s Request for Fees and Costs.)

On September 18, 2007, Plaintiff filed his "Objections to 'Opinion and Order Granting Defendant's Motion for Sanctions and Denying Plaintiff's Counter Motion for Sanctions.'" Plaintiff argued, *inter alia*, that the court deprived him of his constitutional rights by not ruling in his favor, the sanctions are "unwarranted baseless and illegal sanctions and fraud upon the court," the sanctions "are being applied with evil intent" and "[t]hese proceedings were initiated for a just cause and the actions of the judge and the defendant are to pervert the case by misrepresenting claims, doctrines, rules, [and]

2

precedent to accomplish an ulterior motive." (*See generally* "Plaintiff's Objections to Opinion and Order Granting Defendant's Motion for Sanctions and Denying Plaintiff's Counter Motion for Sanctions.") Plaintiff's objections focused on attacking the court's decision to grant sanctions; they did not at all address the reasonableness of the amount of attorneys' fees and costs sought by Defendant.

## II.  STANDARD

The "lodestar" approach is considered to be the proper method for determining the amount of reasonable attorney fees. *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *see also United States v. Metro. Health Corp.*, No. 02-485, 2005 WL 3434830, at *7 (W.D. Mich. 2005) (applying the lodestar approach in determining the reasonableness of an attorneys' fee award in a civil contempt case). In making the "lodestar" calculation, "[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433-34.  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Id.*  Once the lodestar is calculated, the fee may be adjusted in consideration of a number of factors: (1) time and labor, (2) difficulty of the case, (3) skill necessary, (4) the extent the attorney is precluded from working on other matters, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) the time limitations, (8) the amount involved and results obtained, (9) the attorneys' experience, reputation, and ability, (10) the undesirability of the case, (11) the nature and length of the attorney-client relationship and (12) awards in similar cases. *Id.* at 430 n.3.

## III.  DISCUSSION

## A. Reasonable Hourly Rate

Defendant seeks to recover fees for work performed by attorney William Altman at $205 per hour, by attorney Gregory Murray at $315 an hour and by paralegal Sandra Engebretsen at $100 per hour. (*See generally* Def.'s Request for Fees and Costs.)

A reasonable hourly billing rate is generally calculated according to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 896 n.11. An attorneys' fee must be "adequate to attract competent counsel, but . . . not produce windfalls to attorneys." *Id.* (internal quotations and citations omitted).

District courts have relied on the State Bar of Michigan 2003 Economics of Law Practice survey to determine average billing rates in Michigan, and the Sixth Circuit has approved this practice. *See Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 F. App'x 498, 501-02 (6th Cir. 2006). The 2003 State Bar of Michigan survey demonstrates that, during 2003, the average hourly billing rate for attorneys practicing in Michigan was $177 and for attorneys practicing in southeastern Michigan, $186. (2003 Mich. Bar Survey at 25-26.) For attorneys working in firms that have between eleven and twenty attorneys, the average 2003 billing rate was $195. (*Id.* at 25.)
Even taking into account the rate increase from 2003 to 2006, a number of courts have found that $200 per hour constituted a fair average billing rate for fee award purposes in several types of litigation. *See Auto Alliance Int'l v. U.S. Customs Serv.*, 155 F.App'x

4

226, 228 (6th Cir. 2005); *Lamar*, 178 F.App'x at 501-02; *Darbyshire v. Garrison*, No. 04-CV-72272, 2006 WL 581032, at *3 (E.D. Mich. Mar. 8, 2006).

Altman is employed by the law firm of Vercruysse Murray & Calzone. (Aff. of William Altman in Support of Def.'s Fees and Costs at ¶ 4.) The firm consists of approximately sixteen attorneys and is located in southeast Michigan. Regarding Altman's background, skills and experience, Altman's affidavit indicates that he graduated first in his law school class at Detroit College of Law, was editor of his school's law review, served as a law clerk to a judge of the United States District Court for the Eastern District of Michigan, specializes in labor and employment law and has practiced law for over ten years. (*Id.* at ¶¶ 2-4.) The instant case appears to represent at least an average degree of complexity, with Plaintiff's complaint alleging (1) intentional infliction of emotional distress, (2) a violation of Title VII of the Civil Rights Act of 1964 (sexual harassment) and (3) a due process violation under the Fourteenth Amendment to the U.S. Constitution. (Pl.'s Compl. at 12, 16, 22.) Given that an hourly rate of $200 constitutes a fair average billing rate for fee award purposes in several types of litigation, the court finds that Altman's requested fee of $205 per hour is reasonable under the circumstances. The modest upward departure in hourly fee is justified by Altman's background, skill and experience, the time and labor invested in this case and the results obtained from the litigation.

Next, Defendant seeks reimbursement for 2.2 hours of attorney time at an hourly rate of $315 with respect to Altman's colleague, Gregory Murray. Murray's affidavit indicates that he has specialized in labor and employment law since 1978 and is a founding principal of Vercruysse Murray & Calzone. (Aff. of Gregory Murray at ¶¶ 2-3,

Def.'s Request for Fees and Costs Ex. A.) Although Murray cites generally to his background and expertise, he does not present sufficient evidence that an hourly rate of $315 is reasonable in this market. The court does, however, find that Murray's partner-status and his nearly thirty years of expertise in the field of labor and employment law warrant a reasonable upward departure in hourly rate. The court finds that, under the circumstances, $230 per hour is a reasonable rate for Murray. This rate is in the range of other fee awards granted in this district. *See Darbyshire v. Garrison,* No. 04-72272, 2006 WL 581032, at *3 (E.D. Mich. Mar. 8, 2006) (finding reasonable attorney hourly rates of $200 and $250); *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 929 (E.D. Mich. 2005) (awarding attorneys' fees based on rates ranging from $188-$290). Finally, Defendant seeks to recover paralegal fees at a rate of $100 per hour. According to the 2003 Michigan Bar Survey, the median hourly billing rates for paralegals in firms with twenty or more attorneys ranged from $70 to $100 per hour depending on the paralegal's experience. (2003 Mich. Bar Survey at 27.) For paralegals with at least five years of experience, the rate was $90 in Southeast Michigan. *Id.* Although the law firm at which Engebretsen works employs slightly fewer than twenty attorneys, the court finds that Defendant's requested paralegal rate is reasonable, considering Engebretsen's thirteen years of experience, the rate increases from 2003, the complexity of the instant case and the rates awarded in similar cases. *See Gratz*, 353 F. Supp. 2d at 949 (awarding paralegals an hourly rate of $100); *Kissinger, Inc. v. Singh*, 304 F. Supp. 2d 944, 954 (W.D. Mich. 2003) (finding paralegal rate of $95 per hour reasonable).

### B. Number of Hours Reasonably Expended

Defendant seeks compensation for a total of seventy-nine hours of attorney time and thirteen hours of paralegal time.  (Fees and Costs Itemization, Def.'s Request for Fees and Costs Ex. D.)  The attorney time consists of time spent (1) meeting with Defendant to discuss the case and strategy, (2) meeting with co-counsel to discuss strategy, (3) reviewing prior litigation files, (4) reviewing Plaintiff's motion for default judgment, (5) working on Defendant's motion to dismiss, (6) working on Defendant's motion for a protective order, (7) working on Defendant's first motion for sanctions, (8) working on a response to Plaintiff's motion for a default judgment and (9) reviewing the court's orders regarding Plaintiff's motion for a default judgment, and Defendant's motion to dismiss, motion for a protective order and first motion for sanctions.  (*Id.*)  Moreover, the paralegal time consists of time spent (1) reviewing prior case pleading logs, (2) endeavoring to obtain various transcripts, (3) obtaining photographs from Detroit Diesel security, (4) assembling exhibits to Defendant's motion to dismiss, motion for protective order and motion for sanctions and (5) hand-delivering courtesy copies of Defendant's motions to the court.  (*Id.*)

The court finds that the aforedescribed seventy-nine hours of attorney time and thirteen hours of paralegal time were reasonably expended.  The hours claimed are neither vaguely documented nor excessive, and were expended as a direct result of defending against the allegations in Plaintiff's complaint and his other pleadings.  Accordingly, the court awards Defendant its attorneys' fees for 76.8 hours of attorney time at a rate of $205 per hour, 2.2 hours of attorney time at a rate of $230 per hour and thirteen hours of paralegal time at $100 per hour, for a total attorneys' fees award of $17,550.

7

### C. Associated Costs

Altman claims $505.38 in costs, comprised of a $457.97 in computer research costs, $36.90 in photocopy costs and $10.51 in postage costs. (Fees and Costs, Def.'s Request for Fees and Costs Ex. C.) The court determines that these costs are reasonable and necessary. In light of Plaintiff's failure to present any evidence to the contrary, the court will award Defendant $505.38 in costs.

### IV. CONCLUSION

IT IS ORDERED that Plaintiff pay Defendant $18,055.38 in reasonable attorneys' fees and costs on or before **October 22, 2007.**

        s/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: October 5, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 5, 2007, by electronic and/or ordinary mail.

        s/Lisa G. Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522